HOLLINGSWORTH, Justice.
 

 Appellant and Samuel Salvatore Nastari were jointly charged by information filed in the Circuit Court of St. Louis County with the crime of robbery in the first degree by means of a dangerous and deadly weapon. Upon separate trial by jury, appellant was
 
 *570
 
 found guilty as charged and, pursuant to the punishment assessed in the verdict, was sentenced to imprisonment in the State Penitentiary for a term of five years, from which sentence he has appealed. Error is predicated upon (1) alleged improper cross-examination of appellant’s wife relative to the FBI “wanting” appellant, and (2) Instruction No. 8 given by the court on the subject of appellant’s flight from the scene of the robbery for the purpose of avoiding arrest and his later escape from jail for the purpose of avoiding trial.
 

 The State adduced substantial evidence from which the jui-y could find:
 

 On June 14, 1948, between 8:30 and 9:30 p. m., Sidney Whitworth was on duty as the attendant in charge of (Melvin) Kramer’s Filling Station at the wedge of Bridgeton Station Road and Highway 66, also called Lindbergh Road, in St. Louis County. Appellant and Nastari came to the station in a 1948 Mercury convertible automobile bearing a Pennsylvania license and asked Whitworth if he had a rest room. He directed them through the station to the rest room in the rear. Shortly thereafter, appellant and Nastari returned to the front. Nastari had a drawn revolver and appellant had a drawn German Luger type pistol. One of them, witness could not remember which, held a pistol against Whitworth’s front and the other held a pistol against Whitworth’s back and ordered him into the rest room. When the three of them reached the rest room, either Nastari or appellant asked Whitworth where the money was kept. Appellant went to the front of the station, leaving Whitworth and Nastari in the rest room. Appellant came back to the rest room door and stated he could not open the cash register, whereupon, Nastari “ushered” Whitworth into the front room and had him open the register for them. Appellant, holding a pistol in his hand, stopped about eight feet from the register. After opening the register, Whitworth stepped back and Nastari began to take the money out. There was about $40 in it. Whitworth ran out through the grease room and around the building. After some minutes, he returned. All money was gone from the register. He called the Highway Patrol and gave it a description and the license number of the car in which the two men had come to the station.
 

 Two state patrolmen, riding in a patrol car, and two Kirkwood (Mo.) police officers, riding in a police car, on Highway 66, saw the car proceeding southward and gave chase. The chase continued south-wardly on Highway 66 to Highway SO, thence westwardly on Highway 50 to Ball-win. There the car was driven to the right shoulder of the highway and stopped. Appellant and Nastari fled from it. An hour or more thereafter both were captured. When found appellant was hiding under some bushes. Asked by a patrolman where his pistol was, appellant said he dropped it at a fence and pointed its direction, where it was soon found. It was a German Luger, loaded with five shells. Appellant told the officers he had gotten the pistol while in the armed service of the United States. Taken to the Highway Patrol station, appellant there admitted his participation in the robbery and identified $35 found on his person as money taken from the filling station. On September 6, 1948, a hole was cut in the wall of the jail cell in which Nastari and appellant were confined awaiting trial in St. Louis County and both escaped through that hole.
 

 Appellant’s evidence was: He had previously lived in Pennsylvania and was en route to Los Angeles, riding with Nastari, on the night of the robbery. Both appellant and Nastari were then approximately twenty years of age. They stopped at the Kramer Filling Station and asked the attendant, who was at the station door, where the men’s room was and were directed to the back of the building. On the way to the rest room, appellant saw Nastari pushing Whitworth out of the station and into the rest room. That was his first knowledge that there was going to be a holdup. Nastari told appellant to search the cash register. Appellant did not do so, but followed Nastari and Whitworth to the rest room, where appellant told Nastari he “wanted no part of it”, and, except for being in the rest room, which he had ente
 
 *571
 
 red from the outside rear, he was never in the filling station. He neither took nor received any money from Nastari. Nastari had a pistol, but appellant did not. After the robbery, appellant ran to the car, which Nastari drove away. Shortly thereafter, they noticed the “red light” of a patrol car and the chase began. After the chase had continued for some miles, Nastari steered the car to the highway shoulder and stopped it. Appellant, followed by Nastari, ran from it. Appellant “got under a tree” some 15 or 20 yards from the car. Later, both were found and taken to patrol headquarters, where $18 of appellant’s own money was taken from him. Appellant never told the officers he had a pistol or that he received any of the money from the filling station. On September 6, 1948, appellant, Nastari and another person left the St. Louis County jail and appellant and Nastari travelled together to Joplin.
 

 At trial time, appellant resided and for 40 months had resided at Lancaster, California, which is 78 miles from Los Angeles, where he went under the name of James Rizzo, and under which alias he was married on July 7, 1951. On February 10, 1953, appellant’s wife saw his picture in a newspaper and then he admitted to her that he was wanted in St. Louis County and had been living under a false name. On the next day, following a family conference, appellant called the FBI in Los Angeles and “gave himself in”.
 

 On cross-examination of appellant’s wife, the following occurred:
 

 “Q. (By Mr. Falzone) And then you questioned him as to why his picture was in the paper and he was wanted by the FBI. Is that correct? A. He was wanted by St. Louis County, is what I read.
 

 “Q. What did the article say? Didn’t that article say he was wanted by the FBI, that he—
 

 “Mr. Shaw: Just a minute. I object to that unless it first has been established the case. I object to the calling for facts not in evidence.
 

 “The Court: The objection is overrruled.
 

 “Q. (By Mr. Falzone) Isn’t it true that you saw an article in the paper indicating that he was wanted by the FBI ? A. I saw a picture and an article.
 

 * * * * * *
 

 “Q. Was anything mentioned in there about the FBI ? A. If there was, I did not notice it. * * *”
 

 Appellant insists that the questions propounded by counsel for the State to defendant’s wife “erroneously and improperly inject[s] a prejudicial inference that defendant has committed other crimes or is wanted for other crimes”. In the first place, the objection now made to the questions was not made at the trial; nor does the motion for new trial contain such an assignment. But, in any event, it is pure speculation to say that the jury would infer from the questions that appellant was wanted by the FBI to answer for -crimes other than the one here charged. The questions did not so imply. Furthermore, it was appellant who brought first mention of the FBI into the case by the testimony of his wife that upon her discovery of the “wanted” article appellant “gave himself in” to the FBI. Such testimony, standing alone, leaves an impression it was the FBI that “wanted” appellant. But, the answers given by his wife to the effect that the article stated appellant was wanted by St. Louis County and that she “did not notice” any mention of the FBI were calculated to dispel such an impression. Appellant could not have been harmed by the questions, even under his own (appellate) theory. The assignment is overruled.
 

 Instruction No. 8, of ’which appellant complains, reads as follows:
 

 “The court instructs the Jury that any flight of the defendant is a circumstance to be taken into consideration with all the other facts and circumstances in evidence, and if you find and believe from the evidence that the defendant after the commission of the crime alleged in the Informa
 
 *572
 
 tion, if you so find, fled from the scene thereof with the intent of avoiding arrest for the charge herein, they may take that fact into consideration in determining the guilt or innocence of the defendant and, if you further find and believe from the evidence that the defendant, after commission of the crime alleged in the Information, if you so find, and while confined in the County Jail of St. Louis County, escaped therefrom with the intent of avoiding trial for the charge herein you may also take that fact into consideration in determining the guilt or innocence of the defendant.”
 

 One of appellant’s criticisms of this instruction is that the first half of the instruction “does not lend itself to the proper giving of a flight instruction, inasmuch as it singles out an act that is part of the res ges-tae and unduly calls the attention of the jury to this particular act * * Flight is not an element of the crime here charged. The crime was complete when money was taken from the cash register by means of putting Whitworth in fear. Section 560.120 RSMo 1949, V.A.M.S. When it appeared from the evidence that appellant fled from the scene of the consummated crime, hid from the pursuing officers and, following arrest and confinement in jail, escaped and thereafter went under an assumed name, and no explanation of such conduct was shown, the court was justified in giving an instruction on both flight and escape. State v. White, 189 Mo. 339, 350, 87 S.W. 1188, 1191; State v. Bryant, Mo., 234 S.W.2d 584, 586 [8, 9]; State v. Green, Mo., 236 S.W.2d 298, 299 [1]. The assignment is overruled.
 

 Another contention is that the instruction shifts the burden of proof and conflicts with the instruction thereon. We are unable to find any justification whatever for this assertion. Instruction No. 8 simply tells the jury that it may consider flight to avoid arrest and escape from jail to avoid trial in determining the guilt or innocence of appellant. It does not remotely deal with the burden of proof or conflict with the instruction given thereon. The assignment is overruled.
 

 The remaining assignments are that Instruction 8 assumes the commission of the crime charged and appellant’s guilt thereof assumes appellant was guilty of flight to avoid arrest and does not require the jury to find the fact; and assumes appellant escaped from the county jail with intent to avoid trial. The instruction is awkwardly worded and is not approved as a model, but the question is whether the jury reasonably could have been misled by it. The answer requires consideration of the evidence and the other instructions.
 

 The submission instruction (No. 1) required the jury to find beyond a reasonable doubt each and every fact essential to robbery in the first degree with a deadly and dangerous weapon and appellant’s actual participation therein, and that “if you do-not find the facts to be as aforesaid beyond a reasonable doubt, you must find the defendant Not Guilty * * Instruction-No. 4 told the jury that “if you find and believe from the evidence that the defendant took no part in the robbery as charged in the information, and did not join with Sam Nastari with the intention of participating in any way in the alleged robbery, or that the defendant had no intention of aiding, abetting, or encouraging the commission of the alleged robbery, and actually took no part in said alleged robbery, you should find the defendant not guilty.” Instruction No. 9 instructed the jury on the presumption of innocence and its duty to acquit unless it found defendant guilty beyond a reasonable doubt.
 

 Although denying participation in the robbery, appellant expressly admitted the robbery charged in the information was committed in his presence; admitted he left the scene with Nastari and thereafter fled and hid to avoid the persons who had been chasing him in a patrol car, in effect thereby admitting flight to avoid arrest; admitted his escape from jail, flight with Nas-tari as far as Joplin, and thence on to Cali
 
 *573
 
 fornia, where he lived and married under an assumed name, and did not deny he did so to avoid trial, thus and thereby, in effect, admitting he did escape for that purpose. Even in criminal cases, instructions assuming facts not in dispute are not to be considered prejudicially erroneous. State v. Moore, Mo., 80 S.W.2d 128, 131 [6, 7]; State v. Duncan, 336 Mo. 600, 80 S.W.2d 147, 153 [14]; State v. Hartman, Mo., 273 S.W.2d 198, 205 [16], Certainly then the assumption of admitted facts could not be prejudicially erroneous.
 

 But, as stated, appellant denied participation in the crime. Does the instruction assume that he did participate? We are convinced it does not. In each instance where the phrase, “and if you find and believe from the evidence that the defendant after commission of the crime alleged in the information”, is used it is immediately followed by the cautionary phrase, “if you so find”. The phrase “if you so find” implicitly carries with it a meaning that the jury is to determine the fact immediately prior thereto hypothesized. When Instruction 8 is considered in connection with the evidence and other instructions, it is clear the jury would understand that the question of appellant’s participation in the robbery was the real and live issue in the case and a matter for its sole determination. The record cannot be otherwise fairly construed.
 

 The instruction in the instant case is not like the instruction in the case of State v. Mills, 272 Mo. 526, 199 S.W. 131, 133, cited by appellant. In that case, the phrase was “ '* * * that the defendant, after having stabbed and killed Philip Carpenter, as charged in the information, fled * * ” Unquestionably, the instruction assumed and stated as a fact (which defendant denied) that defendant had committed the crime, and did not qualify the statement by the phrase “if you so find”, as does Instruction 8. Neither is the instruction in the instant case like that given in the case of State v. Meininger, 306 Mo. 675, 268 S.W. 71, cited by appellant. In that case the instruction was very similar to the one here given, except it omitted the qualifying phrase “if you so find”. The court did say it assumed the commission by appellant of the crime charged in the indictment. But, in deciding that the instruction was prejudi-cially erroneous the court significantly passed over as of no consequence any assumption that appellant committed the acts charged in the information and based its decision upon the fact that one of the defenses was that the acts charged were not criminal. Note what it said, 268 S.W. loc. cit., 77: “This is not a case of admitted commission of a crime by some one, and where the only question to be determined by the jury is whether defendant or another committed it [as is the instant case]. The question here is whether or not the instruction assumed that a crime had been committed. We think it did assume such disputed fact.”
 

 Finding no reversible error in the case, the judgment is affirmed.
 

 All concur.