THE STATE v. BYRON E. KING, Appellant.—119 S. W. (2d) 322.

Division Two, August 17, 1938.

1068

*Herbert L. Kelley, Jr.,* for appellant.

*Roy McKittrick,* Attorney General, *J. E. Taylor,* Assistant Attorney General, and *Arthur O'Keefe* for respondent.

ELLISON, J.—The appellant was convicted of murder in the first degree in the Circuit Court of the City of St. Louis and his punishment assessed at death. On this appeal he challenges the sufficiency of the indictment; contends the verdict is not supported by the evidence because there was no proof of deliberation, or of the *corpus delicti* aside from his extrajudicial confession; maintains his confession was involuntary and extorted by physical violence, threats and promises; complains of the admission of incompetent evidence, of improper cross-examination of himself as a witness and of the separation of the jury during the trial; and assigns error in the trial court's failure to instruct on second degree murder and manslaughter, and in the closing argument of the assistant circuit attorney. His defense was an alibi, supported only by his own testimony.

The victim of the homicide was George Speer, who had been a chauffeur for the J. A. McFall & Sons Auto. Livery Company in St. Louis for fourteen years or more. The indictment charged in the

usual form a willful, deliberate and premeditated killing of Speer by appellant with a pistol on January 17, 1936, in violation of the first part of Section 3982, Revised Statutes 1929 (Mo. Stat. Ann., p. 2778). The appellant contends the State's evidence fails to show the killing was deliberate. The State answers that the evidence shows the homicide was committed in the perpetration of a robbery, in violation of the second part of said statute, and that proof of deliberation therefore was unnecessary. The appellant denies that but replies if the State desired to stand on that theory the indictment should have so charged. Hence the contention that it was insufficient to support the verdict.

▮ The proposition is well settled in this State that a prosecution for first degree murder in the perpetration of any of the felonies enumerated in Section 3892, supra, may be maintained on an indictment or information which merely charges a willful, deliberate and premeditated killing. So appellant's attack upon the indictment need not be further considered. [State v. Copeland, 335 Mo. 140, 150, 71 S. W. (2d) 746, 752; State v. Meadows, 330 Mo. 1020, 1027, 51 S. W. (2d) 1033, 1037; State v. Nasello, 325 Mo. 442, 457-458, 30 S. W. (2d) 132, 136.] But a review of the evidence is, of course, necessary to determine whether the proof was sufficient to support the verdict on either theory, i. e., by showing deliberation, or that the homicide was committed in the perpetration of a robbery; and whether instructions on second degree murder and manslaughter should have been given.

There were no eyewitnesses to the homicide. There is strong evidence that it was committed by the appellant, but the State is forced to rely on his admissions to show the circumstances of the killing. The appellant, an ex-convict, arrived in St. Louis on January 11, 1936. He was brought to the DeSoto Hotel by the deceased cab driver Speer that day, according to the testimony of Frank Cahill, clerk thereof, and was assigned to a room. He kept the room until the night of January 16, the night of the homicide, and left without paying his bill. He had no ostensible business and spent much time idling about the hotel. On the night of January 16, about eight o'clock, Robert Gragg, night man for the J. A. McFall & Sons Auto. Livery Co., received a telephone call asking for Speer to come to the Meramec Hotel at Twelfth Boulevard and Pine Street, St. Louis. The person telephoning directed Gragg to tell Speer to call for Mr. King, and said he would be waiting on the corner. Gragg notified Speer accordingly, and Speer said all right. This evidence went in without objection.

▮ At 12:15 that night patrolman J. A. McGuire with two other officers, in response to a radio call reporting a shooting, went to the alley entrance on the east side of Cardinal Street between Caroline and Rutger Streets, and there found Speer seated on the sewer

covering, supported by several persons. He said he had been robbed and shot in the alley. The officers immediately took him to City Hospital No. 1 where he walked, with assistance, into an emergency operating room. It was discovered that a bullet had passed through his body, entering in the region of the kidney on the right side and emerging a little lower and further forward on the left side. Over the entrance wound his overcoat was powder burned and the bullet had passed through all his clothing. From the exit wound the bullet had passed through his underwear and shirt but not through his vest, coat or overcoat. Search for the bullet was made immediately, and officer McGuire found a bullet still covered with wet blood just outside the door of the receiving room at the exact spot where Speer had alighted from the car. He delivered it to Messrs. Kelly and Risch of the Research Division of the St. Louis Police Department. The bullet wound was fatal and Speer died on a day and hour not shown by the record, but the autopsy on his body was held on the morning of January 18, 1936.

Officer McGuire testified fully to a detailed statement about the robbery and shooting given to him by Speer at the hospital, but the court struck it out as hearsay on objection by appellant's counsel. It was inadmissible as a dying declaration because not made in contemplation of impending death. Nevertheless, the record shows the police in some way obtained knowledge that appellant was staying at the DeSoto Hotel. The next morning they searched his room and found a letter signed by a woman named Marie Schmidt. They located her and from her learned that appellant might be found at an address on south Twelfth Street. He was arrested there about five o'clock that afternoon. Within five minutes he admitted "he was the man that was wanted" and agreed to talk to the officer when they got where they could talk alone. First the officers took appellant to the hospital and brought him before Speer who was very weak and unable to talk. They asked Speer if appellant was the man he had out in his cab and who robbed and shot him, and he nodded in the affirmative. The appellant said Speer was the man he had robbed. Then the police took him to headquarters.

At police headquarters appellant made an oral statement admitting his guilt. He was asked where he had left Speer's car after the shooting and volunteered to try to direct the officers to it if they would take him to Union Station to start from as a landmark. This was done and appellant indicated the distances and directions of their course until they arrived at a parking lot in the 1100 block on Locust Street where the car was found. He also told the officers he had that day rented a room in the 3300 block on south Jefferson Avenue, and that he had left the keys to the car there. Officers were dispatched to the address and found the keys where he had said they would be. This testimony was corroborated by Mrs. Peters, landlady

of the rooming house, who identified appellant and said he rented the room about 4:45 P. M. The keys fit the car, which was identified and claimed by an employee of the J. A. McFall & Sons Auto. Livery Company.

Appellant further told the officers where he had hid his revolver. He said after he parked the cab and returned to his hotel, following the homicide, he took a Cherokee street car and rode until the car tracks turned off at a certain place. He conducted the officers to that place and led them behind a billboard where the revolver was found on a cross beam twelve feet above the ground. It contained five loaded shells and one empty shell. Mr. Kelly of the Research Division of the Police Department fired a test bullet from the revolver and compared it under a miscroscope with the evidence bullet found at the hospital entrance and believed to have passed through Speer's body. His expert opinion was that both had been fired from the same revolver. He qualified as an expert though modestly disclaiming that he was one.

Something like two hours elapsed while the officers were receiving appellant's oral confession and making the excursions with him to find the automobile and revolver. They returned to police headquarters between seven and eight o'clock and proceeded to take a written confession. In the latter appellant substantially corroborated his prior oral statements, and in some respects elaborated them. He denied he had 'phoned for Speer's cab the night of the robbery, saying another man did that, but admitted the cab came to Twelfth Boulevard and Pine Street; that he rode in it; and that he knew Speer and had been driven in his cab to the DeSoto Hotel when he arrived in St. Louis. He said that during the ride he asked Speer how business was and the latter answered he averaged $10 or $15 per shift. Then appellant drew a ''gun'' and said, ''Well, in that case, I'll take it.'' Speer produced about $3.25 and kept driving. Then he said ''Do you want to leave me out,'' and started to park his cab as a police car drew near. Appellant made him continue until the police car had passed, and at the next stop sign got into the front seat.

They continued further, Speer turning several corners of his own accord, until appellant said ''Let me out anywhere.'' Speer drove into an alley about 150 feet. Appellant had the pistol on his lap, but put it in his pocket still holding the grip as he got out and started to walk away. Speer said ''So, long.'' Appellant said ''I'm sorry I had to do it, good-bye,'' and Speer replied ''O.K.'' Just then he heard Speer's feet scrape on the floor and whirled around. Speer had one foot on the running board and his hand was raised with something in it. He called appellant a very vile name and then the confession says: ''I had the gun in my pocket like this when he called me that I swung around and there was an explosion of a shot.'' Speer

fell and shouted for the police, and, appellant continued, "I thought if I run out of the alley I'll get caught right away so I jumped in the cab."

Then he drove the car to the parking lot where it was found, walked over to the DeSoto Hotel and went to his room. After a few minutes it occurred to him he might be discovered there so he took his belongings and left. He took a street car, rode out some distance and hid his revolver where the officers found it. He identified the pistol. In the confession he further accounted for his movements up to the time of his arrest, admitted taking the officers to where the car and pistol were found, and renting the room where the car keys were recovered.

This evidence clearly makes a prima facie case of homicide in the perpetration of a robbery within the statute. It is true that Speer and appellant drove around for a short interval between the robbery and the shooting, but during that time appellant held the revolver in his lap keeping Speer in durance. And he shot and killed Speer when the latter attempted to interfere with his departure. Escape with the loot was within the *res gestae* of the robbery; indeed, it was an ingredient of the crime. [State v. Adams, 339 Mo. 926, 933, 98 S. W. (2d) 632, 637, 108 A. L. R. 838.] Further, Section 4062, Revised Statutes 1929 (Mo. Stat. Ann., p. 2864), provides: "Any person who shall use any motor vehicle as a means to assist in the perpetration of any robbery in any degree thereof, or shall use a motor vehicle as a means of escape after the perpetration of any robbery in any degree, he shall be punished with the penalty fixed for the robbery in the first degree." That statute may or may not apply to this case—we are inclined to think it does—but whether it does or not, it is legislative recognition that escape is an element of the crime of robbery.

Neither can we sustain appellant's contention that the State's evidence was insufficient because there was no proof of the *corpus delicti* outside of appellant's admissions. There was independent proof that appellant's called for Speer's cab that night; that Speer was found fatally wounded on a public street about midnight; that appellant's pistol inflicted the wound; that the wound was not self-inflicted (for the pistol was found at a distant place); and that appellant fled (for Speer was found alone.) This was enough to establish the *corpus delicti,* viz., that Speer's death was caused by a criminal agency other than his own. [State v. Kauffman, 329 Mo. 813, 827, 46 S. W. (2d) 843, 848.] Furthermore, full proof of the *corpus delicti* independent of appellant's extrajudicial confession was not required. [State v. Kauffman, supra; State v. Meadows, supra, 330 Mo. 1. c. 1026, 51 S. W. (2d) 1. c. 1037; State v. McGuire, 327 Mo. 1176, 1182, 39 S. W. (2d) 523, 524.]

There being proof that the homicide was committed in the

perpetration of a robbery, which is first degree murder under Section 3982, supra, and no evidence to the contrary save appellant's broad denial at the trial that he committed the homicide at all, was appellant entitled to an instruction on second degree murder or manslaughter? Numerous cases hold that where the evidence so shows without dispute the trial court is not required by Section 3984, Revised Statutes 1929, Mo. Stat. Ann., p. 2788 (see also Secs. 4451, 4452, Mo. Stat. Ann., pp. 3057, 3058) to instruct on lesser degrees of homicide. [State v. Adams, supra, 339 Mo. l. c. 934, 98 S. W. (2d) l. c. 637, 108 A. L. R. l. c. 845; State v. Aguelera, 326 Mo. 1205, 1214, 33 S. W. (2d) 901, 904; State v. Nasello, supra, 325 Mo. l. c. 458, 30 S. W. (2d) l. c. 137; State v. Messino, 325 Mo. 743, 769, 30 S. W. (2d) 750, 761; State v. Merrill (Mo. Div. 2), 263 S. W. 118, 123 (13); State v. Hopper, 71 Mo. 425, 430.]

But several of these decisions say an instruction on murder in the second degree was unnecessary because there was *no evidence in the record* calling for it. In the instant case the appellant in his written confession declared that as he started away from the automobile Speer called him a vile name and raised his hand, with something in it, as if to strike. Was that stated fact, if true, "just" provocation such as reduced the crime from first degree murder to second degree murder, even though the homicide was committed in the perpetration of a robbery? Undoubtedly not. Speer had the right to resist the robbery and asportation and to arrest appellant as felon. [State v. Batson, 339 Mo. 298, 304, 96 S. W. (2d) 384, 388.] And it cannot be contended that appellant had withdrawn from the felonious enterprise, for what he was doing at the time was not only within the *res gestae* of the robbery, but was a part of it, as we have already held. He was in no position to invoke ameliorative rules of law lowering the grade of homicide. It is well established in analagous circumstances that an accused forfeits the right of self-defense. [13 R. C. L., sec. 127, p. 823; 30 C. J., sec. 215, p. 49; State v. Painter, 329 Mo. 314, 324, 44 S. W. (2d) 79, 82.] And if the law takes away that fundamental right where the accused is the aggressor all the more should it brush aside a claim that mere words and hostile demonstrations *provoked* the robber into committing a homicide which enabled him to avoid arrest and escape with the fruits of his original crime. When the cases cited above say there was no evidence calling for an instruction on second degree murder, they mean there was no evidence tending to show the homicide was not committed in the perpetration of the robbery—or other specified felony.

■ The conclusions thus far reached upholding the judgment below are based on the assumption that the appellant's written confession was competent evidence. Appellant asserts it was incompetent because it was extorted by physical violence, threats and promises. He did not interpose an objection on that ground until after all the

testimony regarding his oral confession had been admitted. But when he finally made the objection the jury was excluded and the court heard his evidence touching the circumstances in which both the oral and the written confessions were received.

Appellant denied that he told the police where Speer's cab, his own revolver, and the automobile keys could be found, denied that he accompanied the officers to those places, and denied that he rented the room on Jefferson Avenue where the keys were recovered. He further denied that he knew or had ever seen Speer before and that he had ridden from Union Station to the DeSoto Hotel in Speer's cab when he arrived in St. Louis. On the contrary he stated he came to St. Louis in a bus and drove in a Yellow Cab from the bus station to the DeSoto Hotel because he had seen it advertised in a newspaper. He said soon after he was taken to police headquarters and photographed the police accused him of the murder, slapped him, doubled their fists; that one Sergeant kicked him in the stomach; someone knocked him in a chair eight feet; that the police struck him three or four times a minute for ten or fifteen minutes—forty or fifty times in all—first with open hands and then with their fists; that they gave him a black eye made his nose bleed, and cut the inside of his mouth. Also they told him if he did not confess his lady friend (Marie Schmidt, whose letter was found in his hotel room) would get the same thing he did. Then he signed the confession, which had been prepared in advance, without reading it, and made certain interlineations at the officers' direction.

Marie Schmidt testified she was at the police station when the appellant was brought in. She was in a room adjoining the one where the appellant and police were, with the door open between. It sounded like they were pounding the breath out of him because he was choking, crying and hallooing; and they took him a glass of water three times. One of the officers informed her appellant had told them where Speer's cab was and that they were going out to get it. She was asked about but did not tell of hearing directly any conversation between appellant and the police.

James McLaughlin, assistant circuit attorney, and Harvey L. Schmitt, police stenographer, were present when the written confession was taken. John B. Hanna, manager of the DeSoto Hotel at the time was called in as a witness around nine-thirty P. M. for about fifteen minutes. He said appellant's appearance was all right then (no black eye or bleeding nose) and that he was answering questions quietly with a stenographer taking down his statement. Mr. McLaughlin, assisted in taking the written confession and asked appellant and the officers some preliminary questions to get a grasp of the case. He said the appellant answered the questions freely throughout, that his appearance did not indicate he had been the victim of personal violence, and that there was none while he was

there, and there were no promises. Mr. Schmitt, stenographer, was not called as a witness during the preliminary examination in the absence of the jury but did testify later before the jury.

Sergeants Bean, Borlinghaus and Cliffe assisted in arresting appellant. Bean was with him at all times during his oral and written confessions until the stenographer began the transcription thereof. Bean and Cliffe both testified appellant freely admitted his guilt within a few minutes after his arrest. They were in the party when appellant led the officers to Speer's cab in the parking lot and to the billboard where the revolver was found. Chief of Police John J. McCarthy also went on these two trips. Sergeants Borlinghaus and Cliffe were "in and out" while appellant was being examined for his written confession at police headquarters. They testified there was no violence or abuse of appellant at any time and that no promises were made to him. Sergeant Bean and Chief of Police McCarthy also said no violence was offered to him. On this testimony the appellant's objection to the introduction of the confession was overruled and the jury recalled.

We cannot see any error in this. The alleged promise that a third person—his lady friend Mrs. Schmidt—would be saved from "getting the same thing he did" if he confessed, was not a promise of worldly advantage such as would invalidate the confession under the decisions of this court up to now. [State v. Williamson, 339 Mo. 1038, 1045, 99 S. W. (2d) 76, 79.] Furthermore, after hearing evidence pro and con in the absence of the jury the trial court found no such promises were made, and that the appellant was not mistreated. The evidence was ample to support that conclusion. The procedure accorded with precedent. [State v. Christup, 337 Mo. 776, 781, 85 S. W. (2d) 1024, 1026.] This assignment is overruled.

■ Error is assigned in the Points and Authorities in appellant's brief on the admission of hearsay evidence, but the point is not touched upon in his Argument. The complaint is that the court permitted Sergeant Cliffe to testify what the appellant told him that Speer told appellant. The incident was trivial and the testimony was interrupted and never completed. What Cliffe stated appellant told him was that on his arrival in St. Louis when Speer took him to the DeSoto Hotel, Speer said "if you need me——." Then the witness was interrupted by an objection and never finished the sentence. Obviously what he was about to say was that Speer asked to serve him further if he needed cab service. This was competent as an admission against interest in view of appellant's denial that he had had any previous acquaintance with Speer and of his statement that he had not ridden in the latter's cab on the occasion mentioned. It was not hearsay.

■ Another assignment complains of the separation of the jury. During the course of the trial, at a noon recess one of the jurors fainted

‚and became ill.  He was taken to a sleeping room in the court-house and visited by a physician in the presence of one of the deputy sheriffs in charge of the jury.  The eleven other jurors were left in the deliberation room and eventually taken out to lunch by two other deputy sheriffs.  This was done under order of the court.  Deputy McCormick testified that he remained with the sick juror constantly during the entire time he was separated from the eleven other jurors. The juror said the same.  Then McCormick said he was with the sick juror until the two other deputies "brought him back a sandwich and some coffee."  Later he stated the two other deputies "Came in with it," referring to the sandwich and coffee.  Deputy Stonebreaker said he and Carrier, the third deputy, took the sick juror to the sleeping room and then McCormick, the first deputy, "was there and we left him in charge and took the other eleven to dinner."  Deputy Car-rier did not testify.  Deputy McCormick and the sick juror both de-clared the case was not mentioned or discussed at any time while he was away from the other jurors.

Appellant construes this testimony to mean there was an interval when all three deputies were with the sick juror and the eleven others were left alone.  But that is only a vague inference drawn from equivocal testimony and is in conflict with Stonebreaker's positive testimony on cross-examination that at all times one of the deputies was with the sick juror and another one with the other jurors.  The statute, Section 3682, Revised Statutes 1929 (Mo. Stat. Ann., p. 3235, does forbid a separation of the jury during the trial of a capital case, even with the consent of counsel, and if such separation occurs the burden is on the State to prove that no prejudice resulted.  But there was substantial evidence here that all the jurors were kept under the surveillance of the officers at all times though one of them was physi-cally separated from the others, and that nothing prejudicial resulted. There is no evidence to the contrary.  The trial court was in a better position to know the facts and we feel bound by its conclusion.  [State v. Shawley, supra, 334 Mo. l. c. 384, 67 S. W. (2d) l. c. 90; State v. McGee, 336 Mo. 1082, 1092, 83 S. W. (2d) 98, 104; State v. Tarwater, 293 Mo. 273, 290, 239 S. W. 480, 485.]

Another assignment is that the cross-examination of appellant ranged outside the scope of his examination in chief, in violation of Section 3692, Revised Statutes 1929 (Mo. Stat. Ann., p. 3242).  The question arose in this way.  When appellant objected to the introduc-tion of his confession on the ground that it was involuntary, and the jury was sent out, he took the stand and testified to the circum-stances in which it was obtained.  His direct examination was limited to that.  On cross-examination the assistant circuit attorney went into the question of his guilt or innocence and asked him in what kind of a cab he rode to the DeSoto Hotel on his arrival in St. Louis.  Ap-pellant's counsel objected, explaining that the matter had not been

covered in his direct examination. The assistant circuit attorney retorted that in such a preliminary hearing out of the presence of the jury the State is not bound by the ordinary rules applicable to the cross-examination of a defendant in a criminal case under Section 3692, supra. The court overruled appellant's objection and the cross-examination was continued along the same line for several pages in the record. Among other things it was brought out that appellant spent the night before the night of the homicide in a house of ill-fame, a fact not stated in his written or oral confession and having no bearing on its voluntariness.

Section 23, Article II of the Constitution of Missouri provides that no person shall be compelled to testify against himself in a criminal cause. Section 3692, supra, provides that the defendant in a criminal cause shall not be required to testify, but may do so at his option, and shall be liable to cross-examine as to any matter referred to in his examination in chief. Under Section 3481, Revised Statutes 1929 (Mo. Stat. Ann., p. 3115) the same restriction applies to preliminary proceedings before a justice of the peace to determine whether there is ground for binding an accused over for trial, on a felony charge. So, also, it is held that the testimony of a defendant at a coroner's inquest cannot be used against him at his trial unless freely and voluntarily given. [State v. McDaniel, 336 Mo. 656, 671, 80 S. W. (2d) 185, 193.] The constitutional guaranty against involuntary self-incrimination, says 70 Corpus Juris, section 888, page 734, protects an accused "in any judicial inquiry which has for its primary object the determination of (his) guilt or innocence of a given offense." [See, also, 16 C. J., secs. 1501, 1505, pp. 730, 731.] The statement is made in 28 Ruling Case Law, section 10, pages 425, 426, that this immunity extends to "any judicial proceeding," and to examinations before any body "that has power to subpoena and compel the attendance of witnesses."

State v. Young, 119 Mo. 495, 520, 24 S. W. 1038, 1045, declares: "The Constitution means more than the protection of the accused on his final trial when his rights are scrupulously guarded by the courts. It as clearly protects him from being forced to testify against himself in any and all preliminary investigations, whether before the coroner, grand jury or the justice on his preliminary examination. The immunity afforded him by the Constitution is broad enough to protect him against self-incrimination 'before any tribunal, in any proceeding.' " When the precise question here under consideration was raised in State v. Meyer, 293 Mo. 108, 115, 238 S. W. 457, 459, it was held the cross-examination was proper because it did *not* transgress the scope of the direct examination, thus implying that if it had taken a broader range it would have been improper.

It must be conceded the authorities cited above are grounded mainly on a defendant's *constitutional* right to immunity from self-incrim-

ination, whereas the appellant here did not expressly invoke the Constitution in making his objection to the assistant circuit attorney's cross-examination, but based it only on Section 3692, supra. Nevertheless, we are unwilling to construe the statute and declare the appellant's rights thereunder without considering also his constitutional rights, for the two are, or may be, correlative. When Section 3692 was originally passed, Laws 1877, page 356, it contained no provision restricting the cross-examination if the defendant elected to testify; and it was held in State v. Clinton, 67 Mo. 380, 387, 29 Am. Rep. 506, decided in 1878, that when he voluntarily became a witness he waived the constitutional protection in his favor and was subject to cross-examination the same as any other witness. Thereupon, at the next session of the General Assembly, the statute was changed to read as it does now. [Sec. 1918, R. S. 1879.] In other words, the insertion of the provision limiting the cross-examination to matters inquired into in chief had the effect of restricting the waiver of immunity to matters referred to in the direct examination, and the section became a statute enforcing the constitutional provision so far as concerning cross-examination outside the range of the direct examination.

We think Section 3692 does apply to the cross-examination of a defendant in a preliminary inquiry outside the presence of the jury as to whether his confession was voluntary. The learned Assistant Attorney General in effect concedes this but argues that the error was harmless because the jury did not hear the cross-examination. It seems to be the rule in the Federal courts and a number of State jurisdictions that even though the confession be involuntary, yet if it discloses incriminating evidence or leads to the discovery of facts which in themselves are incriminating, such facts and so much of the involuntary confession as relates directly thereto, may be proven before the jury. [16 C. J., sec. 1506, p. 731.] There are two cases in Missouri which may be thought to sustain that view in part: Ward v. State, 2 Mo. 120, 124, 22 Am. Dec. 449; Ex parte Buskett, 106 Mo. 602, 608-9, 17 S. W. 753, 755, 27 Am. St. Rep. 378, 14 L. R. A. 407. But if that is so, how can the improper cross-examination be considered *harmless* error, where the facts or witnesses unearthed are used against the defendant before the jury on the question of his guilt or innocence?

Nevertheless, we think the error was harmless in the instant case because in the *direct* examination of appellant before the jury after the confession was admitted and the trial resumed, his counsel led him over much of the ground covered by the objectionable cross-examination. And the State on cross-examination and otherwise did not take advantage of the information there disclosed. Nothing was proven that was not already known. In the State's cross-examination

of appellant before the jury only two objections were made by appellant's counsel, and both were sustained.

One assignment in the motion for new trial complains of the assistant circuit attorney's closing argument. But the argument is not preserved in the bill of exceptions, and the point is abandoned in appellant's brief. The final assignment in the brief informs us that one of the police officers who figured rather prominently in the trial as a witness for the State has since been suspended for alleged theft. This fact does not appear in the bill of exceptions and of course cannot be considered by this court.

The appellant had a fair trial before the jury and the conviction must be and is affirmed. But, since the judgment provides for the execution of the death sentence by hanging within the walls of the city jail of the City of St. Louis, pursuant to Sections 3722 and 3723, Revised Statutes 1929 (Mo. Stat. Ann., p. 3268); and inasmuch as these sections have since been repealed by Laws, 1937, pp., 222, 223, effective September 6, 1937, requiring the punishment of death to be inflicted by the administration of lethal gas at the State Penitentiary in Jefferson City, Missouri; it is ordered that the cause be remanded to the trial court with directions to have the appellant brought before it and to pronounce sentence in accordance with the statutes last aforesaid, and the holding of this court in State v. Brown, 342 Mo. 53, 112 S. W. (2d) 568, 569. All concur.