The State v. Jesse Lee Carter, Appellant.—131 S. W. (2d) 546.

Division Two, September 12, 1939.*

*NOTE: Opinion filed at May Term, 1939, July 7, 1939; motion for re-hearing filed; motion overruled at the September Term, September 12, 1939.

*Earl C. Borchers* and *Jay B. Wilson* for appellant.

*Roy McKittrick*, Attorney General, and *J. F. Allebach*, Assistant Attorney General, for respondent.

WESTHUES, C.—Appellant, Jesse Lee Carter, was convicted of murder in the second degree, in the Circuit Court of Buchanan Coun-

ty, and sentenced to imprisonment in the penitentiary for a term of fifteen years. He appealed. The question of the sufficiency of the evidence to sustain the charge was preserved for review. The following facts are supported by substantial evidence: Ill feeling existed between the appellant and the deceased, Robert Lee Pierce. On the tenth day of August, 1937, at about 4:00 P. M., Pierce parked his car in front of appellant's place of business. There was evidence that Pierce was under the influence of liquor. While still in his car he cursed and vilified appellant. A Mr. Sprake at this time started to go into appellant's place of business, and Pierce said to him:

"Don't go in there and drink none of that lousy beer; go down below and get some good beer."

 This seemed to have angered appellant and he walked to the street where Pierce was then standing and struck him on the jaw, causing him to fall against the fender of the car. When Pierce straightened, appellant struck him a second time and he fell to his hands and knees. When he arose appellant hit him a third time, knocking him over backwards. His head struck the street, rendering him unconscious, and he died within a few hours as the result of a hemorrhage within the brain. The State's evidence justified a finding that Pierce, the deceased, cursed appellant but made no attempt to assault him. One witness testified that Pierce was too intoxicated to engage in a fight. There was also evidence that Pierce's right arm was somewhat incapacitated, due to an injury he had sustained years before. There was substantial evidence that appellant's assault upon deceased was deliberate and with intent to inflict severe injury. Note the following evidence by a witness on cross-examination:

"I saw Red hit him and I saw him go over on the fender and when he got up he hit him the second time, and he went over on the sidewalk and when he hit him the third time he took one step to Mr. Pierce and drove it up under the jaw and Red Carter knows that is the way it was."

Other witnesses gave similar testimony. Appellant pleaded self-defense. He testified that he attempted to get deceased to go home; that the deceased grabbed him and he pushed deceased away; that he, deceased, fell backwards to the street. Appellant insists that since no deadly weapon was used the evidence fell short of sustaining a conviction of murder in the second degree. We reviewed this question recently in the case of State v. Clark, 111 S. W. (2d) 101, l. c. 202 (2). In that case a conviction of murder in the second degree was sustained. The assault upon the deceased was made with the fist, as in the case now before us. For earlier cases on the same point see cases cited in the above opinion. From the authorities there cited it will be noted the rule is well settled, that a conviction for murder may be sustained even though the assault is made without a deadly weapon.

■ In rebuttal the State introduced evidence, over appellant's objection, of a difficulty appellant had with one Spratt. Appellant briefed this point at length and it may be conceded that the evidence was incompetent unless appellant's action during the trial rendered it admissible. An examination of the record discloses that the trial court did not err. Briefly stated the record shows the following: Witnesses, while testifying in chief for the State, stated that deceased, while talking to appellant, said:

"You beat up old man Spratt, because he was old and drunk and I don't think you got any feathers in your cap, or any credit for that."

While defendant was on the stand the prosecuting attorney asked him a question with reference to the Spratt difficulty. An objection, by defendant, was promptly sustained and the jury instructed to disregard the question. On redirect examination the following occurred:

"Q. Now, as to Mr. Spratt—Red, did you and Mr. Spratt have some trouble? A. Yes, we had a little trouble.

"Q. Tell the jury about that, will you? Where were you working then? A. I was not working then. Mr. Spratt at one time had slipped up on me with a club, and knocked me in the head, the scar is there yet. At another time he had cut a brother of mine's throat, the jugular veins and 16 others. He has the scar there yet. I tried to have a warrant sworn out for Mr. Spratt but they would not issue it.

"Q. Do you mean you or your brother did? A. My brother did.

"Q. What you knew yourself, Red. Tell about this affair of yours and Mr. Spratt's? A. Mr. Spratt came in and I were working in Mr. Lannings. He came in there, the way he comes in anybody else's place, and tries to tear it up, and drink beer for nothing. Insulting anyone in there. I asked him to get out. He didn't and I put him out."

In rebuttal the State was then permitted to introduce evidence with reference to the Spratt episode which contradicted the evidence given by the defendant. It is evident that the evidence in rebuttal was admissible, but only so because appellant saw fit to testify in detail as to the Spratt difficulty.

■ Appellant contended that Ralph L. McDonald, a juror, was related to the defendant, and therefore not a competent juror to try the case. This information came to appellant's counsel after the case had been submitted to the jury. Counsel objected to a verdict being received. The facts, as later developed, were, that the juror's wife's cousin married a brother of the defendant. The juror did not know this fact when he was questioned. But, be that as it may, under the facts disclosed the juror was not related to the defendant. [2 C. J. 378.]

■ The prosecuting attorney in closing his argument to the jury

stated in substance that after the final argument in the case the matter would be entirely in the hands of the jury; that the people of the county would be awaiting their verdict and wondering if they would be given protection. This was objected to by defendant's counsel, which objection was overruled. The ruling was assailed as error. It has been generally ruled that such an argument is not improper. In 16 Corpus Juris, 910, section 2260, it is stated that the prosecuting attorney, ''. . . may make remarks illustrating the evil consequences that might result from their failure to perform their duty, and may in effect tell them that the people look to them for protection against crime.''.

[See, also, State v. Swain, 239 Mo. 723, 144 S. W. 427, l. c. 428 (7) 6; State v. Dipley, 242 Mo. 461, 147 S. W. 111, l. c. 117 (22).]

█ The remaining assignments of error briefed pertain to the instructions given by the court. Appellant asserts that instructions sixteen and twenty-one improperly restricted the right of self-defense. We do not think so. It is unnecessary to embody the instructions herein. A similar contention was made in the case of State v. O'Leary, 44 S. W. (2d) 50, l. c. 52 (1) (2, 3). The question was there discussed at length and ruled against appellant's contention. Instruction No. 16 in substance informed the jury that words and epithets, or threats, alone did not justify an assault, unless he, the defendant, from the acts and conduct of his adversary, the deceased, had reasonable cause to believe that his adversary was about to kill him or do him some great bodily harm. In this case the evidence of the State justified a finding that the deceased used vile and insulting words toward appellant, but that he did not at any time attempt to make an assault upon appellant. The evidence further justified the finding that appellant assaulted deceased because he was angered by what the deceased said. The defendant claimed that he did not assault deceased but merely tried to get him to go home; that deceased grabbed him, and in self-defense he, appellant, pushed deceased back. In these circumstances it was proper to give Instruction No. 16 for the guidance of the jury. Instruction No. 21 was a self-defense instruction in a form which has often been approved by this court. It embodied every element necessary to constitute self-defense. A similar instruction was approved in State v. Huett, 340 Mo. 934, 104 S. W. (2d) 252, l. c. 261 (10). The instructions correctly declared the law and fully protected appellant in his right of self-defense.

█ The trial court gave an instruction on the subject of flight. This was assigned as error. In the case of State v. Duncan, 336 Mo. 600, 80 S. W. (2d) 147, l. c. 153 (14), an instruction on flight was condemned for two reasons: First, because the instruction in that case assumed that the defendant fled; second, because the instruction did not inform the jury that if defendant fled for some reason other than to escape prosecution then the fact that he fled should not be

considered. The instruction given in this case was not subject to either criticism. It provided in substance that if the jury found and believed from the evidence that defendant fled for the purpose of avoiding trial upon the charge of the alleged killing, then the jury was authorized to consider that fact in passing upon the guilt or innocence of the defendant; but, if the defendant went away for some other purpose, then such act should not be considered. The evidence disclosed that the defendant gave bond after his arrest and within two days disappeared. He was found in the State of New Mexico living under an assumed name. His bondsmen paid the expenses of his return. Appellant testified that he left for the purpose of raising money for his defense and because he was afraid that the sons of deceased would harm him. The instruction protected defendant on his theory of the case. The point is therefore ruled against him.

Instruction No. 18, given by the court, defined excusable homicide as found in Section 3986, Revised Statutes 1929 (Mo. Stat. Ann., p. 2792). This instruction authorized a verdict of not guilty if the killing of deceased was excusable under the provisions of the statute. The instruction was for defendant's benefit. We cannot conceive how the instruction could have been harmful to him. Had the instruction been omitted it is certain that complaint would have been made because it was not given.

The record proper is free from error. The judgment is affirmed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.

*NOTE: Opinion filed at May Term, 1939, July 7, 1939; motion for rehearing filed; motion overruled at September Term, September 12, 1939.