**STATE of Missouri, Respondent,**

v.

**John Gilbert PHILLIPS, Appellant.**

No. 44888.

Supreme Court of Missouri,

Division No. 1.

March 11, 1957.

No attorney for appellant.

John M. Dalton, Atty. Gen., Grover C. Huston, Asst. Atty. Gen., David Donnelly, Sp. Asst. Atty. Gen., for respondent.

HYDE, Judge.

Defendant appeals from the judgment and sentence adjudging him guilty of murder in the first degree and fixing his punishment at imprisonment for life in the penitentiary in accordance with the verdict of the jury.

Defendant contends that he was entitled to a directed verdict so we will state the facts shown by the State's evidence. Defendant was charged with the murder of Louis Otto, 18 years old, who left his home in Crystal City, Jefferson County, Missouri, in his Dodge automobile about 3:00 P.M. July 19, 1954, to go to work in House Springs, where he was a Dairy Queen man-

ager. Louis Otto (hereinafter referred to as deceased) did not reach his destination and that night about 10:00 P.M. defendant overturned the car, in which deceased had left home, south of Columbia, Monroe County, Illinois, by colliding with a driveway post in front of a farmer's house. Defendant was seen to leave the car and start up the road toward Columbia. A revolver was found in the glove compartment of the car with two empty chambers and three live shells in it. (Another live shell was found on the floor of the car.) Defendant was picked up by three men in another car, who stopped at the scene of collision and then drove up the road after him, and who turned him over to the Columbia Chief of Police. Defendant was then taken to Waterloo, the county seat of Monroe County, and placed in the custody of the Sheriff. (Monroe County, Illinois, is directly across the Mississippi River from Jefferson County, Missouri.) It was found that an Illinois license attached to the car with bailing wire had been issued for a car owned by defendant's sister and her husband who lived in East St. Louis, Illinois. The Missouri license, which was on the car when deceased left home in it, was never found.

On July 21st, Shirley Otto, sister of deceased, went to Columbia with Sheriff Church of Jefferson County and identified the car. Defendant, after first denying he had been in the car, had told the officers (Sheriff Goeddel of Monroe County, Illinois State Policeman Reicher, and F. B.I. Agent Hafen) that he was hitchhiking from Cape Girardeau toward St. Louis when he was picked up by a soldier driving the Dodge car and was given a ride to Chester, Illinois. He said the soldier parked the car in Chester, telling him he would be back in about a half-hour, but that the soldier did not come back so he got in the car, drove to East St. Louis where he visited his sister. He said he then drove south to Renault, Illinois, where he visited friends and was on his way back to East St. Louis when he wrecked the car near Columbia. The offi-

cers checked the car and found a sticker on it, showing it had been greased on July 19th, and that the mileage on the speedometer was only 117 miles more than the mileage shown on the grease sticker. They determined that if the car had been driven from Crystal City to Chester and then to East St. Louis and back again to Renault and Columbia, the mileage would have been much greater and they so informed defendant. A brother of deceased also talked to defendant, trying to find out what became of deceased, but got no information. However, about 10:30 P.M. on July 21st, defendant indicated to the F.B.I. Agent a desire to change his story and tell more facts but he wanted to "be assured of what he might get or what could happen to him." Defendant said "he didn't mind serving time in the penitentiary but he didn't want to get the gas chamber." At defendant's request Sheriff Church was called and both the F.B.I. Agent and defendant talked to him. Defendant said he received no positive assurance of any thing but was told that the Jefferson County Prosecuting Attorney might come over and talk to him the next day. Nevertheless, defendant said "he wanted to get it off his mind and get the thing over with", and so made another statement to the F.B.I. Agent and Sheriff Goeddel.

In this statement, defendant said in hitchhiking from Cape Girardeau he met a soldier who said his name was Harry. They got a ride together and then were separated but met again at Crystal City. The soldier had a pint of whiskey which they drank and soon after were picked up by a boy driving the car defendant later wrecked near Columbia, Illinois. Defendant said the soldier got in first and sat next to the boy and he sat next to the soldier, all three in the front seat. He said that after driving on the Highway about ten miles the soldier pulled out a gun, pointed it at the boy and said he wanted the car and told him to pull off at the next side road. They turned off on a blacktop road and after driving about one mile turned off on a

gravel road about 50 yards to a creek. There was some discussion about what to do with the boy and the soldier decided to put him in the trunk. He had the boy take some tires out of the trunk but after he did so he ran across the creek. The soldier ran after him, caught him and fired two shots. The soldier came back and said: "Let's get out of here" or "get this thing out of here." Defendant got in and drove the car to East St. Louis. Defendant said he told the soldier he was going to visit his sister and the soldier said he didn't want to go there but would call by later. He let the soldier out and never saw him again. After this statement was made, the F.B.I. Agent, Sheriff Goeddel, and an Illinois State Policeman, went to Jefferson County, meeting Sheriff Church and other Missouri officers, and looked for the place defendant had described. Early in the morning of July 22nd, they found the body of deceased across Glaze Creek in a little patch of trees. He had been shot twice, in the chest and in the head.

It was admitted at the trial that a bullet found in the body of deceased had been fired from the gun found in the car defendant wrecked near Columbia, Illinois. The State also produced as a witness, a filling station employee, who said deceased drove his car into the station about 3:00 P.M. July 19th and bought gas. He said there was only one person with him and identified defendant as that person. On the same day that deceased's body was found, defendant waived extradition and made another statement in which he said only he was in the car with deceased and that he used the gun to make him drive off the road to the creek. He said he had him take the tires out and intended to put him in the trunk but then decided it was too hot and he might smother, so he decided to take him across the creek and tie him with a rope he found in the car. He said, when they were standing across the creek talking about tieing him, deceased grabbed for the gun and it went off. He said he did not remember shooting twice. (No rope was found by the officers at the scene.) Defendant repudiated this statement at the trial and again claimed a soldier was with him and fired the shots, saying the statement he gave the F.B.I. Agent was the correct account. He said he made the July 22nd statement saying that he did the shooting because he was threatened with mob violence if he was taken to Jefferson County and the Prosecuting Attorney promised he would be kept in jail at Clayton if he made it.

 It is obvious under this evidence that a jury case was made. Not only was defendant in possession of the car in which deceased left home and the revolver with which he was shot, but he also knew where his body was and directed the officers to it. Furthermore, he was identified as the only other person in the car with deceased when he was last seen. All this was overwhelming circumstantial evidence and amply sufficient without defendant's oral admissions and written confession. See State v. Clark, Mo.Sup., 277 S.W.2d 593; State v. Bayless, 362 Mo. 109, 240 S.W.2d 114; State v. Taylor, 347 Mo. 607, 148 S.W.2d 802; State v. Hall, Mo.Sup., 231 S.W. 1001; State v. Howard, 118 Mo. 127, 24 S.W. 41. Defendant says the State failed to prove the homicide occurred in the perpetration of a robbery. The facts that defendant had deceased's car under the circumstances shown, and was with him in the car when he was last seen, are sufficient circumstantial evidence to show robbery with intent to take deceased's car from him. Furthermore, deceased's empty billfold was found in the wrecked car. See State v. Kenyon, 343 Mo. 1168, 126 S.W.2d 245; State v. Burnett, Mo.Sup., 293 S.W.2d 335, concerning resistance of deceased. Defendant also says the ownership of the car was not proved, "nor was possession, control, nor that the automobile was under the auspices of one Louis Otto at all." Apparently, this is based on the description of the car by the officers as a 1948 or 1947 Dodge. However, deceased's sister said it was a 1947 black Dodge four door sedan and that deceased

had had it since February of 1953; and she identified it when she went to Illinois with Sheriff Church to see the car defendant wrecked. This certainly was sufficient proof that defendant took the car deceased was driving. Defendant relies on such cases as State v. Richardson, Mo.Sup., 36 S.W.2d 944; State v. Conway, 351 Mo. 126, 171 S.W.2d 677; and State v. Missey, Mo.Sup., 234 S.W.2d 777 in which circumstantial evidence was held insufficient. However, in such cases the circumstances shown could only cast suspicion, whereas in this case defendant had the victim's automobile and the weapon with which he was killed, knew where his body was and directed the officers to it. These circumstances and others noted were very strong proof of defendant's guilt. Defendant further says the State did not make any investigation to determine what finger prints were on the revolver. Of course, this was not essential to prove that defendant committed the crime when there was so much other evidence to prove it, and it was shown that the revolver had been handled by several people before it was known that deceased was missing. Defendant's further contention that his confession was not admissible because the corpus delicti was not established is wholly without merit. As to what constitutes corpus delicti see State v. Francies, Mo.Sup., 295 S.W.2d 8, 12, and cases cited; see also State v. King, 342 Mo. 1067, 119 S.W.2d 322. We hold that it was proper to submit the case to the jury.

■ We must, however, find it was reversible error to give instruction 19 which was as follows: "The Court instructs the jury that if you believe and find from the evidence that the Defendant made any voluntary statement or statements in relation to the offense charged in the information, after such offense is alleged to have been committed you must consider such statement or statements all together, and in the light of the circumstances under which you may believe they were made. The Defendant is entitled to what he said for himself, if true, and the state is entitled to the benefit of anything he may have said against himself in any statement or statements proved by the State. What the Defendant said against himself, if anything, the law presumes to be true, unless negatived by some other evidence in the case, because said against himself. What the Defendant said for himself in such statement or statements proved by the state, the Jury may believe or disbelieve it, as it is shown to be true or false by the evidence. It is for the Jury to consider, under all the facts and circumstances in evidence, how much of the whole statement or statements of the Defendant proved by the State, the Jury, from the evidence, deem worthy of belief." This instruction twice tells the jury that they may give the defendant the benefit of what he said for himself only if they believe it is true but that what he said against himself is presumed to be true. Thus it seems to say the jury had no function to determine whether or not anything the defendant had said against himself was true, even though later denied by him. Instructions stating such a presumption were condemned in State v. Dollarhide, 333 Mo. 1087, 63 S.W.2d 998 and State v. Johnson, 333 Mo. 1008, 63 S.W.2d 1000. These opinions of Division Two were transferred to and adopted by the Court en Banc because of previous decisions in which similar instructions had been approved without much discussion. See statement concerning these cases in State v. Robertson, 351 Mo. 159, 171 S.W.2d 718. In the Johnson case, 63 S.W.2d loc. cit. 1004, it was pointed out that Missouri cases stood alone in approving such an instruction and that some previous Missouri cases had criticised it. In State v. Duncan, 336 Mo. 600, 80 S.W.2d 147, 154, although holding that such an instruction as the one in this case was not harmless error when "there were no favorable statements in the case to be weighed with the unfavorable statements" (considering it a comment on the evidence for that reason as also stated in the Robertson case, 171 S.W.2d loc. cit. 720), the Court further stated "that an instruction telling the jury

what the presumption of law is with regard to a disputed question of fact on which they are required to pass is error."

In a subsequent case, State v. Enyard, Mo.Sup., 108 S.W.2d 337, 339, in which the defendant had made statements both favorable and unfavorable to his defense, we held such an instruction reversible error. In that case we said: "Does the instruction under consideration leave those matters for the jury to determine? We think not. The State offered evidence of statements made by the defendant, some very favorable and others very detrimental. The instruction informed the jury in substance: You take what the defendant said against himself as true; what he said for himself you need not believe, even though the State introduced the evidence." Likewise, in State v. Busch, 342 Mo. 959, 119 S.W.2d 265, 268, where there was very little in the statements favorable to defendant, we said: "It might be argued that the instant case is distinguishable from the Johnson Case and the Duncan Case in that in the Johnson Case the instruction omitted essential elements and in the Duncan Case there were no favorable statements to be considered. But the reasoning of both those decisions points to the conclusion that it is prejudicial error to give such an instruction in a criminal case even where there is evidence tending to show both favorable and unfavorable statements. We so hold." See also State v. Luna, Mo.Sup., 162 S.W.2d 859; State v. Talbert, 351 Mo. 791, 174 S.W.2d 144; State v. Cole, Mo.Sup., 174 S.W.2d 172; State v. Lyles, 351 Mo. 1174, 175 S.W.2d 587.

In a more recent case in Banc, State v. Martin, 364 Mo. 258, 260 S.W.2d 536, 541, we held it reversible error to give an instruction telling the jury there was a presumption about a matter concerning which there was testimony by eyewitnesses. We pointed out that in civil cases we condemn instructions which tell the jury what is "presumed", saying "presumptions are for the court, not the jury", and citing Lampe

v. Franklin American Trust Co., 339 Mo. 361, 379, 96 S.W.2d 710, 720, 107 A.L.R. 465, and Dove v. Atchison, T. & S. F. R. Co., 349 Mo. 798, 803, 163 S.W.2d 548, 530. (Certainly this is also true of presumptions concerning fact issues in criminal cases.) We further stated, in State v. Martin, quoting from State v. Galbraith, 330 Mo. 801, 50 S.W.2d 1035, 1036: "It may be added that the trend of the recent decisions of this court has been to root out of our criminal procedure instructions that may be classified as being comments on the evidence. In the case of State v. Swarens, 294 Mo. 139, 241 S.W. 934, the court in banc condemned an instruction that told the jury that the possession, by defendant, of recent stolen property, raised a presumption of guilt. This instruction had been approved by the earlier cases. Instructions that the flight of defendant raises a presumption of guilt have been condemned by this court. State v. Hogan, Mo.Sup., 252 S.W. 387, loc. cit. 389. Other instructions, condemned as comments on the evidence, may be found in State v. Cole, 304 Mo. (105) loc. cit. 115, 116, 263 S.W. 207." To tell the jury that facts are presumed actually is to do more than merely comment on the evidence because it amounts to a direction that they must accept the presumed facts as true. State v. Enyard, supra. Therefore, we must hold this instruction prejudicially erroneous.

■■■■ Defendant claims error concerning rulings on evidence. Some of these will not be likely to occur on retrial but it should be pointed out that it was improper to introduce comments of the officers to each other, such as the statement of the prosecuting attorney, when told that a filling station employee had seen deceased with only one man in his car, that "we don't have to go any further, that makes our case." However, it was not improper to show what questions were asked defendant if necessary to make what he said intelligible. State v. Talmage, 107 Mo. 543, 17 S.W. 990; State v. Butler, 258 Mo. 430, 167 S.W. 509. Nev-

ertheless, testimony as to defendant's answer to the question as to why he did not notify the police if the robbery and shooting was done by the soldier ("With my record, the law would not believe my story") should not have been admitted as a part of the State's case before defendant had testified and at a time when evidence of his previous convictions was not admissible. This was repeated by several witnesses and at least tended to require defendant to take the stand to explain his record of previous convictions, most of which were on theft or fraudulent check charges. But see State v. James, 194 Mo. 268, 279, 92 S.W. 679, 683. However, defendant's statement that "all I know is I stole an automobile", when asked by deceased's brother if he killed the boy, was properly admitted. The taking of the car was so related to the crime charged against defendant that proof of taking the car under the circumstances shown tended to show defendant was guilty of murder in the first degree. See State v. Williamson, 106 Mo. 162, 170, 17 S.W. 172; State v. Hepperman, 349 Mo. 681, 162 S.W.2d 878, 884; State v. Kornegger, 363 Mo. 968, 255 S.W.2d 765; State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, 307. Thus this statement tended to prove defendant's participation in the crime charged. As to defendant's statements about wanting to make a deal for punishment, see State v. Christian, Mo.Sup., 245 S.W.2d 895, and conflicting authorities cited. As to testimony of witness Deputy Sheriff Marsden, that defendant told his sister (visiting him in jail) "I did it", being properly received in rebuttal, see State v. Martin, Mo.Sup., 56 S.W.2d 137, 140, although, of course, it could have been used as a part of the State's case. This also applies to what defendant said to this witness about hating the gas chamber but being a man who could take his punishment, which likewise could be construed as an admission against interest. There is no question about the admissibility of defendant's confessions. Before these confessions were admitted, defendant's attorneys were asked by the Court if they wanted to offer any proof on involuntariness of his statement and they said "no".

Since this case must be tried again, we should point out that defendant's contentions as to Instruction 5 are without merit. The first paragraph of this instruction (the second paragraph defined "robbery") was as follows: "The Court instructs the jury that under the laws of this state, every homicide which shall be committed in an attempt to perpetrate a robbery is deemed murder in the first degree. In this case, if the jury find and believe from the evidence to a moral certainty and beyond a reasonable doubt, that a homicide occurred while the defendant was attempting to perpetrate a robbery at the County of Jefferson, State of Missouri, then such attempt to perpetrate such a robbery stands in lieu of deliberation and premeditation as hereinbefore defined, and the jury will be warranted in finding the defendant guilty of murder in the first degree and should so say in their verdict." Defendant says the information did not charge robbery; that there was no evidence that defendant attempted to perpetrate a robbery; and that this instruction conflicted with Instruction 2 defining first degree murder as the killing of a human being wilfully, feloniously, deliberately, premeditatedly, and with malice aforethought. As to the second contention, we have held in ruling defendant's claim of being entitled to a directed verdict that there was ample evidence to show defendant killed deceased while robbing him of his car. As to the first and third, it is well settled that proof that the killing occurred during the perpetration of a robbery may be made under an information charging murder in the usual form. State v. Nasello, 325 Mo. 442, 30 S.W.2d 132, 136 and cases cited; State v. Messino, 325 Mo. 743, 30 S.W.2d 750, 759; State v. Moore, 326 Mo. 1199, 33 S.W.2d 905; see also State v. Meadows, 330 Mo. 1020, 51 S.W.2d 1033, 1037; State v. Holloway, 355 Mo. 217, 195 S.W.2d 662, 665. Substantially the same instruction was given in State v. Schnelt, 341 Mo. 241, 108 S.W.2d 377, 383

and held not to conflict with an instruction requiring a finding that the killing was done "deliberately", but instead properly supplemented it. See also State v. Reese, 364 Mo. 1221, 274 S.W.2d 304. We hold this instruction did not conflict with Instruction 2 and was proper. Furthermore, it was not error to refuse Instruction A, offered by defendant, because it defined the same terms which were defined in Instruction 2 and made no reference to the situation covered by Instruction 5.

We also hold proper Instruction 20 on flight and hold that evidence of flight was properly admitted. This instruction was as follows: "The Court instructs the jury that if you believe and find from the evidence in this cause that the defendant, John Phillips, after his arrest and while he was confined in Jail fled from the Jefferson County Jail at Hillsboro, Missouri, where he was then being held, with the intent to avoid being put on trial for the offense upon which he is now being tried, such flight should be considered by you, in connection with all the other evidence in the case, in determining the question of the defendant's guilt or innocence. But if you do not believe that he fled or attempted to flee for the purpose of avoiding trial, but that he went away for some other purpose, then such act on his part should not be considered as any evidence against him." (We have placed a comma after the word "held".) This instruction did not assume a controverted fact as was held concerning instructions involved in cases cited by defendant. State v. Jordon, 306 Mo. 3, 268 S.W. 64; State v. Meininger, 306 Mo. 675, 268 S.W. 71; State v. Burns, Mo.Sup., 268 S.W. 79. There was ample evidence to support this instruction. It was shown that defendant was confined in the county jail of Jefferson County, at Hillsboro on October 5, 1954; that on the following morning, October 6, he was missing from the jail; that he was not admitted to bail; that a vent pipe had been broken off inside the jail and the locks on the cell block had been pried off; and that there was a hole in the ceiling of the jail where there was a skylight and it was open and off to one side. It was further shown that he was found in the afternoon of October 6, at De Soto, inside a box car in the freight yards. Thereafter, in a conversation with the Sheriff of Jefferson County, defendant stated "He did not have anything to lose by breaking out of jail." Defendant said he left the jail to try to find the soldier he claimed did the shooting. He said the jail was not securely locked and that he just walked out. Such instructions were approved in State v. Bryant, Mo.Sup., 234 S.W.2d 584, loc. cit. 586; and State v. Brletic, Mo.Sup., 283 S.W.2d 568, loc. cit. 572. Defendant's contention that this brings in evidence of another separate and distinct crime is not valid reason for refusing to admit this evidence because it tends to prove him guilty of the offense for which he is on trial.

For the error noted the judgment is reversed and the cause remanded.

All concur.