STATE of Missouri, Respondent,

v.

Doris HUNTER, Appellant.

No. 53113.

Supreme Court of Missouri,
Division No. 2.

July 14, 1969.

Motion for Rehearing or to Transfer to Court En Banc Denied Sept. 8, 1969.

Norman H. Anderson, Atty. Gen., Jefferson City, Dennis J. Quillin, Special Asst. Atty. Gen., Clayton, for respondent.

Bruce Nangle, St. Louis, for appellant.

BARRETT, Commissioner.

Charged with murder in the first degree the appellant, Doris Hunter, has been found guilty of murder in the second degree and her punishment fixed at ten years' imprisonment.

The conviction arose in these circumstances: David Williams, age 46, although married had lived with Lavone Smith, age 33, for two or three years. They had two children and Lavone sometimes used his name and called him "my husband." David was employed in a tavern at Cass and Spring Avenues. And in addition to Lavone and his wife, David, over the years, had spent considerable time with Doris— they often met at the tavern. But, says Doris, "we had fell out" in 1964 over his attentions to Lavone and after that she didn't see him "that much." Nevertheless, Lavone frequently harassed Doris by telephone about Dave and in 1965 "came in a cab and brought Dave's clothes there"—to Doris' three-room apartment at 1352a Bayard. And in June 1966, Lavone came to the apartment and knocked the glass out of the downstairs door with a shotgun. After that episode Doris met Lavone some place, demanded that she pay $18.95 for the broken door, and requested her to stay away from her place of residence.

In any event, on December 24, 1966, David and Lavone quarreled and David, early in the morning, went to Doris' upstairs apartment on Bayard and there he remained until December 26, 1966, the day of the fatal shooting. On that day, Monday evening, Doris and Dave were sitting on the bed watching television, "I was there visiting" David says, and there was a loud knock at the downstairs door. Doris left the bedroom, went through the living room, opened the upstairs apartment door and looked down the stairway and saw Lavone on the porch outside the downstairs door. Lavone inquired, with considerable profanity, "Is my husband there?" Doris replied, "Your husband don't live here. Don't be here. I don't know your husband" and returned to the bedroom. In the bedroom she "slapped my house shoes on," picked up the gun from the closet shelf and this time went downstairs and opened the

outside door. Lavone again inquired after "my husband," Doris told her, "I don't know your husband. Your husband doesn't come here. I asked you not to come any more, because I don't want to have any trouble." Finally Doris said, "Who is your husband?" Lavone answered, "Dave is" and started cursing and said that "if I did not let her in she would do the same thing she did in June." At that point, Doris says, "she reached her hand in her coat pocket." And after that Doris does not remember anything until she "was going up the steps * * * and told Mr. Williams to call the police." Doris does not remember firing the gun, Dave heard one shot, but when the police were coming up the steps Doris said, "I shot her" and handed Officer Kelly the gun. An autopsy revealed that Lavone died from a bullet wound of the "forehead on right side two inches above the nasal side of the suborbital arch." Lavone's glasses and a "small purse" containing keys, compact and lipstick were found beside her —no weapons were found.

Upon this direct appeal appellant tacitly concedes, as of necessity she must, that the evidence supports the jury's finding of murder in the second degree. She contends, however, that she is entitled to a new trial and briefs and argues three assignments of error: that the court prejudicially erred in failing to instruct the jury on defense of habitation and manslaughter and in permitting the state on rebuttal to offer evidence on a collateral matter.

■■ As to the first assignment, even though the court instructs on self-defense, if the evidence supports it, it is the court's duty as a part of the law of the case to also instruct the jury on defense of habitation. An instruction on self-defense is not alone sufficient because "(t)he jury may well have found that the shooting of deceased was not justified on the ground of self-defense, but was justified in defense of appellant's place of business." State v. Shiles, Mo., 188 S.W.2d 7, 9. The difficulty with the appellant's contention is that unlike in the Shiles case, in which the once ejected patron was attempting to reenter "the restaurant," was again "coming in," and "had one foot in the doorway," there is here no evidentiary support for the defense. Doris, the second trip, went to the bottom of the stairway and she did not open the door she only "cracked it" and Lavone was four to five feet outside "triangularly facing me." Doris does not say that Lavone was forcing her way in or even threatening to do so: "She replied to me if I did not let her in she would do the same thing she did in June"—break the glass out of the door—and she "put her hand in her coat pocket." There was one step up from the porch to the door and Lavone was on the porch, four feet away, and there is no evidence that she so much as made a gesture of entering without the consent of Doris. In short, in the circumstances of this record there was no evidence to support a theory of defense of habitation. State v. Wallach, Mo., 389 S.W. 2d 7, 14; State v. Brookshire, Mo., 353 S. W.2d 681.

■■ And so it is of the assignment that the court erred in failing to instruct on manslaughter. As compelling an instruction on manslaughter the appellant points to Lavone's telephone calls, the fact that in the summer of 1964 Lavone threw a glass of beer in her face, and in June 1966 had broken the glass out of the door and urges "that personal violence was her assailant's intention" demanding as a part of the law of the case the instruction. Here, in effect the appellant urges that there was evidence of provocation for her shooting and killing Lavone and therefore a manslaughter instruction was compelled. But as was pointed out in the second Brookshire case, State v. Brookshire, Mo., 368 S.W.2d 373, and elsewhere, and particularly in the leading case of State v. Creighton, 330 Mo. 1176, 52 S.W.2d 556, the provocation consists of conduct, usually personal violence, producing an *"effect thereof on the mind of the defendant* that reduces the grade of the homicide to manslaughter." See also State v. Porter, 357 Mo. 405, 208 S.W.2d 240. Provocation has the effect of eliminating

from second degree murder the essential element of malice thus leaving, nevertheless, an intentional killing and permitting a finding of the lesser offense of manslaughter. "Voluntary manslaughter has been defined as 'the intentional killing of a human being in a heat of passion on a reasonable provocation, without malice and without premeditation, and under circumstances which will not render the killing *justifiable or excusable homicide*.'" (Emphasis supplied.) State v. Clough, 327 Mo. 700, 704, 38 S.W.2d 36, 38. Here, as indicated, the worst that Lavone threatened was to do what she had done before, Doris says that she put her hand in her coat pocket but she does not say that Lavone advanced upon her or even struck at the door. Lavone's actions may have warranted the instruction on self-defense but there was no evidence demanding the giving of an instruction on manslaughter.

The appellant's third and final assignment that the court prejudicially erred in permitting the state to introduce evidence in rebuttal of a collateral matter is not clearly and fully spelled out in her argument. In her brief it is said that the rebuttal proof was "of another crime, which was raised for the first time by the State on cross-examination of the defendant and denied, thereby binding the prosecution to the denial." In her argument appellant says that the collateral matter was "merely lumping all of the evidence as feelings of bad blood or malice on the part of each of these women toward one another." The state, pointing to specific record pages, says that the rebuttal evidence referred to prior threats by Doris to kill Lavone. On cross-examination Doris was asked whether she had ever threatened to kill Lavone. She denied ever making such a threat including an incident on July 2, 1966, of pointing a gun at Lavone's head. In rebuttal the state called Lavone's sister who testified that on July 2, 1966, they were waiting for a taxicab outside a tavern at Caroline and Ohio and when the cab pulled up the "lady in the back seat," Doris, took a gun from her purse and pointed it at Lavone's head threatening to kill her but "(i)t finally ceased" and they left.

As urged, the cross-examiner is bound by a negative response to a collateral matter, as in sodomy whether the defendant had on other occasions registered into the hotel accompanied by another man. State v. Hamilton, Mo., 310 S.W.2d 906, 908–909. Specific and remote incidents falling within this exclusionary rule are illustrated in State v. Lynn, Mo.App., 184 S.W.2d 760. It is undoubtedly a general rule that previous threats by the accused to kill the deceased are admissible for several reasons, to show malice and premeditation or state of mind (40 C.J.S. §§ 206, p. 1107, 236, p. 1167; State v. Hermann, Mo., 283 S.W.2d 617, 621) and in this sense the testimony does not relate to a collateral matter. State v. Phillips, Mo., 299 S.W.2d 431, 437; State v. Carter, 345 Mo. 74, 131 S.W.2d 546, 547–548. And finally, even if it be assumed that some of the rebuttal testimony did relate to a collateral matter it may not be said here that the court so abused its discretion as to demand the granting of a new trial. State v. Washington, Mo., 383 S.W.2d 518, 524; State v. Smith, Mo., 261 S.W.2d 50, 55; State v. Lewis, Mo., 137 S.W.2d 465, 466.

For the reasons indicated the judgment is affirmed.

STOCKARD, C., concurs in result.

PRITCHARD, C., concurs.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

DONNELLY, P. J., and MORGAN, J., concur.

FINCH, J., concurs in separate concurring opinion filed.

FINCH, Judge (concurring).

I concur in the principal opinion with the understanding that the citation of State v. Brookshire, Mo., 368 S.W.2d 373, and State v. Creighton, 330 Mo. 1176, 52 S.W.2d 556, is for the purpose of showing that in order to require an instruction on manslaughter there must be proof of the absence of deliberation and malice, and that the cases are not cited for the purpose of indicating that there must be a battery. See State v. Williams, Mo., decided June 25, 1969, 442 S.W. 2d 61.